UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ALEXIS MASCHMEIER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 22-cv-05425-RMI<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 34 |

Before the court is Defendant's Motion to Dismiss (dkt. 34) for lack of subject matter jurisdiction and failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have filed a Response in Opposition (dkt. 35) and Defendant has filed a Reply (dkt. 38). For the reasons stated below, Defendant's Motion to Dismiss is granted in part and denied in part as moot.

## BACKGROUND

A. *Factual History*

Plaintiffs seek this court's review under the Federal Tort Claims Act ("FTCA") and the Federally Supported Health Centers Assistance Act ("FSHCAA"). First Amended Complaint ("FAC") (Dkt. 29) at 4. The FTCA allows Plaintiffs to bring certain state-law tort actions against the United States for injuries caused by the negligent acts or omissions of federal employees. 28 U.S.C. § 1346(b). The FSHCAA extends this limited waiver of sovereign immunity to healthcare entities who receive federal funding as well as their employees and certain contractors. 42 U.S.C. § 233(g).

Mad River Community Hospital is run by Open Door Community Health Center

1    ("ODCHC"), a federally qualified healthcare entity under the FSHCAA. FAC (Dkt. 29) at 3. In

2    March of 2019, ODCHC contracted with Dr. Puttler, a Board-Certified obstetrician and

3    gynecologist, to provide his services for "delivery and back-up call to family practice physicians

4    and midwives in need of delivery assistance, including surgical intervention" at Mad River

5    Community Hospital. *See* Def.'s Mot. (Dkt. 17) at 4. Neither party disputes Dr. Puttler's status as

6    a "contractor" for purposes of the FSHCAA. However, the parties do dispute whether Dr. Puttler

7    was acting within the scope of his contract at the time he provided the care at issue in this case,

8    and it is this dispute which gives rise to the instant motion.

9           In October 2019, Plaintiffs, Mrs. and Mr. Maschmeier, presented at Mad River Community

10   Hospital for delivery of their baby, Emma. FAC (Dkt. 29) at 5. Due to complications during the

11   delivery, Dr. Puttler was called in to perform a cesarean section ("c-section"). *Id.* Emma did not

12   survive the delivery. *Id.* Dr. Puttler saw Mrs. Maschmeier at the hospital in the days following her

13   c-section and provided some post-operation care to her at that time. *Id.*

14          In the months following her c-section, Mrs. Maschmeier saw Dr. Puttler for five follow-up

15   visits. *Id.* These visits occurred at Dr. Puttler's private office, located on the hospital campus,

16   between October and December 2019. *Id.* Plaintiffs allege that, during these visits, Dr. Puttler

17   encouraged Plaintiffs to get pregnant "as soon as possible" and failed to warn them that getting

18   pregnant within 18 months of a c-section could endanger Mrs. Maschmeier's life. *Id.* at 5-6.

19   During this time, Mrs. Maschmeier continued to see providers at Mad River Hospital, including

20   Dr. Hackett. *Id.* Plaintiffs allege that they were not warned about the dangers of pregnancy after c-

21   section by any of their providers at Mad River Hospital. *Id.*

22          In February of 2020, approximately four months after her c-section, Mrs. Maschmeier

23   became pregnant with her second child. *Id.* By this time, she had stopped seeing Dr. Puttler for

24   any of her care. *See id.* She did, however, continue to see providers at Mad River Hospital. *Id.*

25   Plaintiffs again allege that none of Mrs. Maschmeier's providers warned her of the dangers of a

26   pregnancy within 18 months of a c-section and further allege that she was not advised that, to

27   protect her own life, it may have been prudent to terminate the pregnancy in its early stages. *Id.*

28          In October of 2020, Mrs. Maschmeier was admitted to UCSF for a scheduled c-section to

1    deliver her second child. *Id.* Mr. Maschmeier was present for the delivery. *Id.* During her surgery,
2    Mrs. Maschmeier suffered significant blood loss and, after her son was successfully delivered, the
3    doctors put Mrs. Maschmeier under general anesthesia and tried various measures to control the
4    bleeding. *Id.* at 7. Mrs. Maschmeier was admitted to the ICU and remained in the hospital for five
5    days. *Id.* Her physicians have since advised that she should not get pregnant again because of the
6    risk to her life. *Id.*

7    Plaintiffs allege that Dr. Puttler, Dr. Hackett, and other unidentified hospital providers
8    negligently failed to advise Mrs. Maschmeier of the dangers of pregnancy within 18 months of a
9    c-section, and that as a result, Mrs. Maschmeier suffered "serious and life threatening"
10   complications during her second c-section. *Id.* at 7-8. Plaintiffs further allege that Mr. Maschmeier
11   suffered emotional distress when he witnessed his wife's second c-section, and that this distress
12   stems from the physicians' alleged failure to properly advise Mrs. Maschmeier of the dangers of
13   her pregnancy. *Id.* at 8-9.

### B. Procedural History

15   As is required by the FTCA, Plaintiffs first raised their claims against Dr. Puttler with the
16   Department of Health and Human Services ("HHS") by filing an administrative tort claim in
17   September of 2021. *Id.* at 3; *see also* Exh. 2 (Dkt. 23). HHS did not respond to Plaintiffs
18   administrative claim within six months, and Plaintiffs, as is their right, proceeded to federal court
19   in September of 2022. FAC (Dkt. 29) at 3.

20   Plaintiffs' original Complaint focused exclusively on the actions of Dr. Puttler. *See* Compl.
21   (Dkt. 1). In response, Defendant filed its first Motion to Dismiss, asserting that the court lacked
22   subject matter jurisdiction over Plaintiffs' claims because Dr. Puttler did not bill ODCHC for Mrs.
23   Maschmeier's follow-up visits, when the alleged infirm advice was given. *See* Def.'s Mot. (Dkt.
24   17). In response to Defendant's motion, and after a hearing on the matter (dkt. 27), the court
25   granted Plaintiffs leave to amend their Complaint (dkt. 28).

26   Plaintiffs timely submitted their First Amended Complaint ("FAC") on June 8, 2023. FAC
27   (Dkt. 29). The FAC introduces two new claims on behalf of Mr. Maschmeier: negligent infliction
28   of emotional distress ("NIED") and loss of consortium. The FAC also extends allegations of

3

failure to properly advise to Dr. Hackett and other unidentified ODCHC providers and contains additional allegations regarding Dr. Puttler's status to ward off Defendant's jurisdictional attacks. *See id.*

In Defendant's second motion to dismiss, Defendant reasserts that this court lacks subject matter jurisdiction over claims arising from Dr. Puttler's follow-up care pursuant to Rule 12(b)(1); moves to dismiss Plaintiffs' NIED claim for failure to state a claim pursuant to Rule 12(b)(6); and moves to strike Plaintiffs' request for prejudgment interest. *See* Def.'s Mot. (Dkt. 34).

As an initial matter, the court notes that Plaintiffs agree that their request for prejudgment interest was improper. Accordingly, the request for prejudgment interest is STRICKEN. Further, because the court finds that all of Plaintiffs' claims are dismissed on jurisdictional grounds, it does not reach Defendant's 12(b)(6) motion for failure to state a claim.[1]

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Live Ins. Co. of Am.*, 511 U.S. 374, 377 (1994). As such, the burden of establishing subject matter jurisdiction rests upon the party asserting it. *Id.* Because subject matter jurisdiction involves a court's power to hear a case, courts have "an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *see also* Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if it does not possess subject matter jurisdiction). A jurisdictional attack under Rule 12(b)(1) may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

---

[1] Defendant does not mention Plaintiffs' new allegations with respect to Dr. Hackett and other ODCHC providers in its Motion to Dismiss. As such, the court reads Defendant's 12(b)(6) motion as applying only to Dr. Puttler. Fleeting mention of Dr. Hackett and ODCHC providers in Defendant's Reply does not remedy their absence in the original motion. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The [court] need not consider arguments raised for the first time in a reply brief."). To the extent that Defendant has the same objections to Plaintiffs' NIED claim irrespective of who caused Mr. Maschmeier's distress, Defendant may raise those objections again when and if Plaintiffs decide to file a Second Amended Complaint. Regardless, the courts' dismissal of all claims on jurisdictional grounds renders the 12(b)(6) motion moot.

4

1  (9th Cir. 2004). A factual attack disputes the truth of facts that, as alleged, would otherwise
2  survive a facial challenge. *Id.*
3        To resolve a factual attack on jurisdiction, the court "may review evidence beyond the
4  complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*
5  (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)). Unlike a
6  motion to dismiss under Rule 12(b)(6), "the court need not presume the truthfulness of the
7  plaintiff's allegations." *Id.*; *White*, 227 F.3d at 1242. The party invoking jurisdiction has the
8  burden of proof (*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730,733 (9th Cir.
9  1979)) and must "furnish affidavits or other evidence necessary to satisfy its burden" (*Safe Air for
10  Everyone*, 373 F.3d at 1039). The court has discretion to look to extra-pleading material to decide
11  the issue of its jurisdiction, "even if it becomes necessary to resolve factual disputes." *St. Clair v.
12  City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).
13        When a question of jurisdiction "involves factual issues which also go to the merits, a
14  court should employ the standard applicable to a motion for summary judgment." *Young* (citing
15  *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (internal quotations omitted). This
16  shift in posture is required only when resolution of jurisdictional facts is akin to a decision on the
17  merits. *See id.*; *Augustine*, 704 F.2d at 1077 ("Where the jurisdictional issue and the substantive
18  issue are so intertwined that the question of jurisdiction is dependent on factual issues going to the
19  merits, the jurisdictional determination should await a determination of the relevant facts on either
20  a motion going to the merits or at trial.") However, where the factual determinations that the court
21  must make are entirely separate from the merits of the case, the court may resolve factual disputes.
22  *See e.g., Davey v. St. John Health*, 297 F. App'x 466, 471 (6th Cir. 2008) (deciding the
23  jurisdictional question of scope of employment under the FTCA on a motion to dismiss for lack of
24  subject matter jurisdiction).
25        Defendant's attack on jurisdiction is factual. Contrary to Plaintiff's allegations, Defendant
26  asserts that Dr. Puttler was not acting pursuant to his contract with ODCHC at the time of his
27  alleged misconduct because he did not bill ODCHC for the care at issue. *See* Def.'s Mot. (Dkt.
28  17). Further, the question of whether Dr. Puttler appropriately billed ODCHC is factually distinct

1 from the merits of Plaintiffs' claims. To decide if Dr. Puttler acted pursuant to his contract, the
2 court need not consider whether Dr. Puttler gave Mrs. Maschmeier inappropriate advice about her
3 pregnancy. As such, the court may consider Defendant's 12(b)(1) motion at this time—the *Young*
4 line of cases does not apply.

## DISCUSSION

A. *Plaintiffs' Claims Arising from Dr. Puttler's Follow-up Care*

As a general principle, the federal government and its agencies are shielded from suit by sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 114 (1994). The FTCA, however, waives the United States' sovereign immunity for certain torts committed by federal employees. 28 U.S.C. § 1346(b); *Brownback v. King*, 141 S. Ct. 740, 744 (2021). This waiver is limited. Under the FTCA, a federal court may hear civil actions brought against the United States for money damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any federal employee acting within the scope of their employment. *See Brownback*, 141 S. Ct. at 744; 28 U.S.C. § 2679(b). Because "sovereign immunity is jurisdictional in nature…the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Meyer*, 510 U.S. at 475 (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Thus, this court's jurisdiction to hear the instant case is limited by the terms of the United States' consent to suit as outlined by the FTCA and the FSHCAA.

The FSHCAA extended the FTCA to certain healthcare entities receiving federal funding, along with their officers, governing board members, employees, and contractors. 42 U.S.C. § 233(g). To receive the benefits of coverage under the FTCA—namely, the federal government's indemnity—a healthcare entity must first apply to be "deemed" an employee of the Public Health Service ("PHS"). § 233(g)(1)(A), (a). Once "deemed" the healthcare entity and its employees and contractors are covered by the FTCA. *See id.* The conditions of coverage are limited to "acts or omissions related to the grant-supported activity" of the entity and, in the case of employees or contractors, to those "acts and omissions within the scope of their employment or contract for services." *Id.*

Courts narrowly construe contracts between federally qualified healthcare centers and their

6

1 contractors.² If a physician fails to comply with the terms of their contract, the physician is not

2 covered by the FTCA. *See Miller v. Toatley*, 137 F. Supp. 2d 724, 728 (W.D. La. 2000). This is

3 true regardless of whether a physician violates their contract knowingly or unknowingly. *Id.*

4 (holding that, where a physician violated the billing terms of his contract, he was not covered by

5 the FTCA, whether motivated by greed or misunderstanding). Courts often rely on billing and

6 payment arrangements to determine whether a physician's conduct is within the scope of their

7 contract. *See id.; see also Lacey-Echols v. Murphy*, No. Civ. 02-2281 (WGB), 2003 WL

8 23571269, at *9 (D.N.J.) (holding that where a physician privately billed patients for delivery of

9 their baby, physician was not covered by the FTCA); *Agyin v. Razmzan*, 986 F.3d 168 (2nd Cir.

10 2021) (holding that, where a physician billed patients privately he was still covered by the FTCA,

11 because his contract specifically allowed for such billing). Thus, the terms of Dr. Puttler's

12 contract, and, specifically, the terms outlining billing and payment, govern whether he acted in the

13 scope of his employment with ODCHC when he provided the care at issue.

14 Dr. Puttler's contract with ODCHC required that, each month, he invoice ODCHC for out-

15 of-hospital patient care at a rate of $100 per hour. Def.'s Mot., Exh. B (Dkt. 17-3) at ¶ 5,7. The

16 contract also required Dr. Puttler to document ODCHC patient care—whether provided in the

17 hospital setting or at his private office—in ODCHC's record system. *Id.* Finally, Dr. Puttler's

18 contract limited ODCHC's professional liability "to those services…which are in scope of the

19 project and the provider and which are recorded and billed by ODCHC." *Id.* at ¶ 11.

20 Defendants have produced Dr. Puttler's invoices to ODCHC for the months of October,

21 November, and December 2019—the period during which Dr. Puttler's five follow-up visits with

22 Mrs. Maschmeier occurred. Def.'s Mot., Exh. E (Dkt. 17-6). The invoices do not contain any

---

² Given that a contract for services extends the federal government's indemnity to otherwise-uncovered private parties, it follows that the contract's terms operate as further conditions on the United States' consent to suit. *See Delvalle v. Sanchez*, 170 F. Supp. 2d 1254, 1269 (S.D. Fla. 2001) (reasoning that the inclusion of contractor liability in the FSHCAA "serves as an expanded waiver of sovereign immunity"). Thus, just as the terms of the FTCA and FSHCAA are "strictly construed" to ensure the United States' is not subjected to suits to which it has not consented, so too, must a contract for services be carefully considered. *See e.g., Dept. of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) ("a waiver of sovereign immunity is to be strictly construed, in terms of scope, in favor of the sovereign"). Liberally reading a contract for services would impermissibly broaden the United States' waiver of sovereign immunity without its consent.

7

charges at the hourly rate, nor do they otherwise indicate Mrs. Maschmeier's follow-up visits. *Id.* Defendants provide the Declaration of ODCHC's Pregnancy and Gynecology Administrative Director, who confirms ODCHC was not billed by Dr. Puttler for Mrs. Maschmeier's follow-up visits. Decl. of Aila Gilbride-Read (Dkt. 17-7). The Declaration of ODCHC's Medical Records Manager confirms that ODCHC has no documentation from Dr. Puttler in its record system regarding Mrs. Maschmeier's follow-up visits. Decl. of Sonia Verville (Dkt. 17-8). Finally, Defendant provides ODCHC's billing history for its care of Mrs. Maschmeier. Def.'s Mot., Exh. D (Dkt. 17-5). ODCHC has not billed Mrs. Maschmeier or her insurance for any out-of-hospital care by Dr. Puttler. *Id.*

It is evident, then, that Dr. Puttler did not bill ODCHC for his follow-up visits with Mrs. Maschmeier. Dr. Puttler also did not document the follow-up visits in ODCHC's record system. Moreover, ODCHC did not bill Mrs. Maschmeier or her insurance for the follow-up visits with Dr. Puttler, which, according to the terms of the contract, precludes liability for ODCHC, and thus, the United States.

Plaintiffs' counter arguments do not adequately address Dr. Puttler's noncompliance with his contract. To explain Dr. Puttler's invoices, Plaintiffs allege that Dr. Puttler received a "global payment" from ODCHC. Pl.'s Opp. (Dkt. 35) at 9. Plaintiffs base this conclusion on four pieces of evidence:

First, Plaintiffs rely on Dr. Puttler's "Visit History," which lists five visits with Mrs. Maschmeier, includes a billing code, and shows a charge of $0.00 for each visit. Def.'s Mot, Exh. C (Dkt. 17-4). Plaintiffs assert that Dr. Puttler's failure to charge Mrs. Maschmeier for her follow-up care indicates that Dr. Puttler believed he had already been paid by ODCHC. Pl.'s Opp. (Dkt. 35) at 9. However, Dr. Puttler's charges to Mrs. Maschmeier are irrelevant—they do not alter the dispositive fact that Dr. Puttler did not bill ODCHC for Mrs. Maschmeier's visits.

Second, Plaintiffs' present a statement made by Dr. Puttler's attorney during a prior state court action, confirming that Dr. Puttler believed his follow-up care of Mrs. Maschmeier was an extension of in-hospital care. Pl.'s Opp. (Dkt. 35) at 8. This too, is irrelevant. Dr. Puttler's reasons for failing to bill ODCHC do not bear on the question before the court, which asks only whether

8

1    Dr. Puttler acted pursuant to his contract and does not venture into his reasons for failing to do so.

2    *See Miller*, 137 F. Supp. 2d at 728.

3          Third, Plaintiffs argue that ODCHC's bill to Mrs. Maschmeier and her insurance, which

4    show two charges, $1,275.00 for "Cesarean Delivery Only" and $372.00 for "Initial Inpatient

5    Consult", represent a "global payment" to Dr. Puttler. Def.'s Mot., Exh. D (Dkt. 17-5). However,

6    these are charges by ODCHC to Mrs. Maschmeier and her insurance—they reveal nothing about

7    what Dr. Puttler charged or was paid by ODCHC for delivery and in-hospital care. See Def.'s

8    Mot., Exh. D (Dkt. 17-5).

9          Finally, Plaintiffs allege that Mrs. Maschmeier was under the impression that Dr. Puttler

10    treated her as an ODCHC physician and that this should affect the court's analysis.[3] Pl.'s Opp.

11    (Dkt. 35) at 11-12. However, Plaintiffs' perception of Dr. Puttler sheds no light on whether Dr.

12    Puttler complied with the terms of his contract.

13          The question is not whether Dr. Puttler believed he was acting under the auspices of

14    ODCHC when he provided Mrs. Maschmeier with follow-up care. The question, most

15    fundamentally, is whether Dr. Puttler complied with the terms of his contract with ODCHC. If he

16    did not comply, regardless of his reasons for noncompliance, he is not covered by the FTCA. *See*

17    *Miller*, 137 F. Supp. 2d at 728.

18          Here, the court finds that Dr. Puttler did not comply with the terms of his contract and, as

19    such, was not acting within the scope of his employment when he administered the care at issue.

20    This court does not have subject matter jurisdiction over claims arising from Dr. Puttler's out-of-

21    scope conduct. Accordingly, the court DISMISSES with prejudice all claims arising from Dr.

22    Puttler's follow-up visits with Mrs. Maschmeier. Plaintiffs' request for discovery and a hearing on

23    this matter is DENIED, as further discovery would be futile.

---

[3] Plaintiffs use principles of agency law to support their argument that Mrs. Maschmeier's perception of Dr. Puttler determines the jurisdictional question. But courts are resoundingly clear that agency law does not apply when analyzing the scope of the United States' consent to suit under the FTCA. *Briggs v. United States*, No. 14-cv-5608-RBL 2015 WL 4459323, at *4 (W.D. Wash. July 21, 2014) (collecting cases). Thus, the court takes Plaintiffs' arguments about Mrs. Maschmeier's perceptions of Dr. Puttler as allegations bolstering their overall claim that Dr. Puttler's belief that he was working on ODCHC's behalf controls the current inquiry.

B.  *Plaintiffs' Claims Arising from Dr. Hackett & Other ODCHC Providers' Care*

Before a Plaintiff may bring an FTCA action in federal court, they must exhaust administrative remedies by presenting the responsible federal agency with an administrative tort claim. *See* 28 U.S.C. § 2675(a). If the agency denies the claim, the claimant has six months to file an action under the FTCA in federal district court. *Id.* Should the agency fail to respond to the claim within six months of its filing, the claimant may presume denial, and may proceed to federal court. *Id.* Importantly, the FTCA's administrative exhaustion requirement is jurisdictional and "must be strictly adhered to." *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011); *see also McNeil v. United States*, 508 U.S. 106, 112 (1993). If a Plaintiff has failed to file a claim with the agency, and instead proceeds directly to federal court, the court must dismiss for lack of subject matter jurisdiction. *See Brady v. United States*, 211 F.3d 499 (9th Cir. 2000) (reasoning that, for the purposes of judicial and administrative economy, Congress "intended to require complete exhaustion of Executive remedies before invocation of the judicial process" and that the agency must be given notice of the claims against it, and an opportunity to address them in-house, prior to their adjudication in federal court).

As mentioned above, Plaintiffs filed an administrative tort claim with the appropriate agency, HHS, in September 2021. HHS failed to respond to Plaintiffs' claim within six months, and, as a result, Plaintiffs filed the instant action with this court. However, Plaintiffs administrative claim did not address allegations against Dr. Hackett and other ODCHC providers, which Plaintiffs now raise in their FAC. *See* Exh. 2, (Dkt. 23). HHS's denial letter, which Plaintiffs received after filing the instant action, also indicates that HHS was only aware of, and thus, only given the opportunity to evaluate, Plaintiffs allegations as against Dr. Puttler. Def.'s Reply, Exh. F (Dkt. 24-2).

It appears that Plaintiffs' allegations against Dr. Hackett and the other ODCHC providers have not been brought before the HHS. Accordingly, this court lacks jurisdiction over these claims for want of administrative exhaustion. As such, the court DISMISSES the remaining claims in Plaintiffs FAC without prejudice, and GRANTS Plaintiff leave to amend. Should Plaintiffs decide to file a Second Amended Complaint, Plaintiffs shall make clear that they have complied with the

administrative claims process, required by the FTCA and FSHCAA, with respect to Dr. Hackett and other ODCHC providers. Although the court does not reach Defendant's 12(b)(6) motion in the instant order, the court emphasizes that Plaintiffs would be wise to consider Defendant's objections to their NIED claim when amending their complaint.

Finally, Plaintiffs have brought the instant action against "the United States and Doe Defendants 1 through 50." *See* FAC (Dkt. 29). This is improper; the FTCA does not allow suits against individual defendants, identified or otherwise. *See* 28 U.S.C. 2679(b0(1) (establishing that for plaintiffs seeking to recover damages for the negligent acts of federal employees, a claim against the United States is the "exclusive" remedy). The only proper party defendant in an FTCA action is the United States. *See Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam); *see also McAllister v. United States*, No C-11-03858 MEJ, 2013 WL 2551990, at *2-3 (N.D. Cal., June 10, 2013) (collecting cases dismissing individual and agency defendants from FTCA actions). Accordingly, the Doe defendants are DISMISSED, and Plaintiffs are instructed to name only the United States as a party defendant in any future amended complaint.

## CONCLUSION

Defendant's Motion to Dismiss is GRANTED in part and DENIED in part as moot in accordance with this order. Plaintiffs are GRANTED leave to amend their complaint. Plaintiffs have 30 days to file an amended complaint.

**IT IS SO ORDERED.**

Dated: December 7, 2023

ROBERT M. ILLMAN
United States Magistrate Judge